IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

             -v-                             02-CR-073-A(15)

JOEL CICERO,

                 Defendant.

**FILED**

AUG 0 1 2006

CLERK, US DISTRICT COURT, WDNY

_____

**PLEA AGREEMENT**

      The defendant, JOEL CICERO, and the United States Attorney for

the Western District of New York (hereinafter "the government")

hereby enter into a plea agreement with the terms and conditions as

set out below.


## I.  THE PLEA AND POSSIBLE SENTENCE

    1.   The defendant agrees to plead guilty to Count 13 of the

Second Superseding Indictment (hereinafter "Indictment"), which

charges a violation of Title 18, United States Code, Section

1951(a) (extortion under color of official right), which carries a

maximum possible sentence of a term of imprisonment of 20 years, a

fine of $250,000, or both, a mandatory $100 special assessment and

a term of supervised release of up to 3 years.  The defendant

understands that the penalties set forth in this paragraph are the

maximum penalties that can be imposed by the Court at sentencing.

2.    The defendant understands that the Court must require restitution in an amount not to exceed $2,000 to be paid to Duty Free International as part of the sentence pursuant to Sentencing Guidelines §5E1.1 and Title 18, United States Code, Section 3663A.

3.    The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in paragraph 1 of this agreement.

## II.    **SENTENCING GUIDELINES**

4.    The defendant understands that the Court must consider but is not bound by the 2000 Sentencing Guidelines (Sentencing Reform Act of 1984).

## ELEMENTS OF THE CRIME

5.    The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

First, that the defendant was a public official, or held public office;

Second, that the defendant obtained property or services not due him or his office for third persons;

Third, that this property or service was given, with the consent of the giver, to the defendant, who knew that the property was given because of the power of the defendant's official position, for the benefit of third persons; and

Fourth, that interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

-3-

**FACTUAL BASIS**

6.   The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

> In approximately late 2000, ProServe Corporation (hereinafter "ProServe") entered an agreement with a company named Duty Free International (hereinafter "DFI") to construct and operate three restaurants (KFC, Pizza Hut, and Taco Bell) at the Lewiston-Queenston Bridge in Lewiston, New York (hereinafter collectively referred to as "the Bridge project"). ProServe is a company based in Denver, Colorado, and is owned and operated by Joseph Aragon.

> DFI had the right to operate at the bridge based on a lease with the Niagara Falls Bridge Commission (hereinafter "NFBC"). At the time of the Bridge project, the defendant was a member of the NFBC, which is an eight-member board consisting of four appointees of the Ontario (Canada) Premier and four appointees of the Governor of New York State. The NFBC was established to finance, construct and operate several bridges, including the Lewiston-Queenston Bridge. The defendant, by virtue of his role as a NFBC Commissioner, was a public official within the meaning of the Hobbs Act.

> In addition, at the time of the Bridge project, the defendant was the Training Director for Laborers' International Union of North America, Local 91 (hereinafter "Local 91"), which is a laborers' union based in Niagara Falls, New York.

> In connection with the Bridge project, ProServe hired Kulback's Construction, Inc.

-4-

(hereinafter "Kulback's"), which is a local non-union construction company, as the general contractor. Kulback's initially hired non-union subcontractors for various aspects of the Bridge project, but did not hire any Local 91 laborers.

Construction began on the Bridge project in early September 2001. On or about September 24, 2001, after about three weeks of construction, a person from DFI contacted Aragon and told him that there was an issue because the Bridge project was not using laborers from Local 91. The DFI official instructed Aragon to contact the defendant to work out the problem.

Subsequently, Aragon and the defendant spoke by telephone. The defendant arranged to meet with Aragon early in the following week at the Local 91 union hall in Niagara Falls to discuss using Local 91 laborers on the Bridge project.

On or about October 2, 2001, Aragon flew from Colorado to Niagara Falls. He then met with the defendant and then-Local 91 Business Agent Mark Congi at the Local 91 union hall. The defendant stated that he was in charge of training for Local 91 and Congi was introduced as an assistant business manager for Local 91.

During the meeting, Aragon told the defendant that he was surprised that there was a union labor issue and asked the defendant to explain the problem. The defendant stated, in sum and substance, that it was his understanding that the Bridge project would use Local 91 laborers. The defendant further stated, in sum and substance, that "it should be as the Bridge Commission contemplated it would be and that's using union labor." The defendant also stated that the Bridge project was not using "our union people," referring to Local 91. After Aragon reiterated that the issue of union labor was not discussed at all during the planning stages of the Bridge project, the defendant stated that the issue must be

resolved and that Local 91 labor should be used on the Bridge project.

At one point, Aragon asked the defendant if he had a conflict of interest because he occupied the dual role of Local 91 official and member of the Bridge Commission. The defendant responded, in sum and substance, that "if push came to shove, his loyalties were with Local 91" because it was his "bread and butter."

Based on the statements made by the defendant, Aragon reasonably believed that the defendant, as an NFBC Commissioner, had the authority to prevent the Bridge project from proceeding if Aragon did not hire Local 91 laborers to work at the site. As a result, Aragon subsequently agreed to hire Local 91 workers for the Bridge project.

Aragon later directed Kulback's Construction to hire Anastasi Trucking and Paving (hereinafter "Anastasi"), which is a company that uses Local 91 laborers, to install the water main at the Bridge project. Anastasi hired Local 91 laborers to work on the Bridge project in March, 2002.

The above facts are set forth for the limited purpose of complying with Rule 11(f) and are not intended to serve as a complete statement of the defendant's criminal conduct.

## BASE AND ADJUSTED OFFENSE LEVEL

7.    The government and the defendant agree that Guidelines §2C1.1(a) (2000 Sentencing Guidelines Manual) applies to the offense of conviction and provides for a base offense level of 10. Because there are no upward adjustments under Chapter 2 or 3 of the Guidelines, the adjusted offense level for the offense of conviction is also 10.

## ACCEPTANCE OF RESPONSIBILITY

8.    At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), which would result in a total offense level of 8.

## CRIMINAL HISTORY CATEGORY

9.    It is the understanding of the government and the defendant that the defendant's criminal history category is I.  The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase.  The defendant understands that the defendant has no right to withdraw

the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

10. It is the understanding of the government and the defendant that, with a total offense level of 8 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 0 to 6 months, a fine of $1,000 to $10,000, and a period of supervised release of 2 to 3 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in paragraph 1 of this agreement.

11. The government and the defendant agree to recommend that the defendant be sentenced at the bottom of the Sentencing Guidelines range set forth above. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations.

### III.   **STATUTE OF LIMITATIONS**

12. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to the extortion or attempted extortion of ProServe Corporation and Kulback's Construction at the Lewiston-Queenston Bridge project in 2001, which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

### V.   **GOVERNMENT RIGHTS AND RESERVATIONS**

13. At sentencing, the government agrees to recommend that the defendant be placed on probation.

14.    The   defendant   understands   that   the   government   has reserved the right to:

> a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning    the    defendant's    background, character  and  involvement  in  the  offense charged,  the  circumstances  surrounding  the charge and the defendant's criminal history;
>
> b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf   that   are   inconsistent   with   the information  and  evidence  available  to  the government; and
>
> c.    modify its position with respect to any sentencing recommendation or sentencing factor under   the   Guidelines   including   criminal history category, in the event that subsequent to  this  agreement  the  government  receives previously unknown information regarding the recommendation or factor.

15.    At sentencing, the government will move to dismiss Count 14  of  the  Indictment  in  this  action,  as  it  relates  to  the defendant.

16.    The  defendant  agrees  that  any  financial  records  and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## Waiver of Right to Post Conviction
## DNA Testing of Physical Evidence

17.   The defendant fully understands that, to the extent that
the government has or may have any items of physical evidence in
this case that could be subjected to DNA testing pursuant to Title
18, United States Code, Section 3600, the defendant has the right
to file a motion with the Court to have such items tested for DNA
in an attempt to prove that the defendant is actually innocent of
the crime to which the guilty plea has been entered in this case.
The defendant has discussed this right with defense counsel, and
the defendant knowingly and voluntarily waives the right to make
such a motion and to have such DNA testing performed on any such
items the government may have or may obtain in the future.   The
defendant fully understands that because the defendant is waiving
these rights, any physical evidence that may exist or be found to
exist in this case will likely be destroyed or will otherwise be
unavailable for DNA testing in the future.

## VI.   APPEAL RIGHTS

18.   The defendant understands that Title 18, United States
Code, Section 3742 affords a defendant a limited right to appeal
the sentence imposed.  The defendant, however, knowingly waives the
right to appeal, modify pursuant to Title 18, United States Code,

-11-

Section 3582(c)(2) and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section II, ¶10 above, notwithstanding the manner in which the Court determines the sentence.  The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section I of this agreement.

19.  The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20.  The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section II, ¶10 above, notwithstanding the manner in which the Court determines the sentence.  However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII.  COOPERATION

21.  The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, in any way involving or related to extortion or attempted extortion.  The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pre-trial and trial proceedings as the government shall deem necessary.

22.  The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement.  The defendant's obligation to testify truthfully and completely shall extend to proceedings in federal, state and local courts in jurisdictions which have agreed to abide by this agreement.

23.  In exchange for the defendant's plea of guilty and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal

-13-

offenses committed in the Western District of New York in any way involving or related to Indictment 02-CR-073-A, filed on June 25, 2003, committed up to the date of such Indictment, and about which the defendant provides complete and truthful information.  Such a promise of non-prosecution does not foreclose any prosecution for an act involving murder, attempted murder, or act of physical violence against the person of another, or conspiracy to commit an act of violence.


24.   Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.


25.   The defendant understands that, notwithstanding the defendant's obligation to cooperate with the government as set forth in this agreement, the government will not file a motion pursuant to Guidelines §5K1.1 for a downward departure from the defendant's sentencing range or pursuant to Rule 35(b) for a reduction of the defendant's sentence.

26. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false information to the government.

27. Upon the request of the defendant, at the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court, and the government agrees that, assuming the defendant's cooperation has been truthful and complete, the defendant may use his cooperation in any arguments he may present to the Court in an effort to persuade the Court to impose a sentence of probation.

28. The defendant's attorney is expressly permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## X.   TOTAL AGREEMENT AND AFFIRMATIONS

29. This plea agreement represents the total agreement between the defendant, JOEL CICERO, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements,

written or oral, entered into between the government and the defendant.

                            TERRANCE P. FLYNN
                            United States Attorney
                            Western District of New York

BY:     _____
        WILLIAM J. HOCHUL, JR.
        Assistant U. S. Attorney

        Dated: August 1, 2006


BY:     _____
        BRETT A. HARVEY
        Assistant U. S. Attorney

        Dated: August 1, 2006

-16-

I have read this agreement, which consists of 17 pages.   I
have had a full opportunity to discuss this agreement with my
attorney, Joseph M. LaTona, Esq.   I agree that it represents the
total agreement reached between myself and the government.   No
promises or representations have been made to me other than what is
contained in this agreement.   I understand all of the consequences
of my plea of guilty.   I fully agree with the contents of this
agreement.   I am signing this agreement voluntarily and of my own
free will, and in signing it, I voluntarily and freely admit those
facts set forth in paragraph 6 of this agreement.

JOEL CICERO
Defendant

Dated: August 1, 2006

JOSEPH M. LATONA, Esq.
Attorney for the Defendant

Dated: August 1, 2006

-17-