UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

vs.                                    Case No. 02-CR-73A

MARK CONGI, JOEL CICERO, et al.,

                Defendants.

---

## MR. CICERO'S RESPONSE TO VARIOUS FACTUAL INACCURACIES CONTAINED IN THE VICTIM IMPACT PORTION OF THE PRE-SENTENCE REPORT

Respectfully submitted,

By _____
    JOSEPH M. LaTONA, ESQ.

Attorney for Defendant,
  JOEL CICERO
Office and Post Office Address
716 Brisbane Building
403 Main Street
Buffalo, New York  14203
(716) 842-0416

## PRELIMINARY STATEMENT

Mr. Cicero agrees with all of the Guideline calculations and other portions of the pre-sentence report, with the exception of the "Victim Impact" portion of the report.

Mr. Cicero's responses to the various factual inaccuracies are set forth below under subdivisions which correspond to the pertinent paragraph of the report.

## PARAGRAPH 24

It is untrue that other union tradesmen were working on the project prior to the initial picketing by members of Laborers Local 91  Moreover, the event which triggered communications between Joseph Aragon and Thomas Daniels of Duty Free International ["DFI"] was the picketing by Laborers Local 91.

Furthermore, the defense disputes the contention that "no Local 91 laborers were needed on the site." Ultimately, at the suggestion of Brian Kulbacki of Kulback's Construction, Anastasi Paving was brought on board as a subcontractor to complete the water main portion of the project.

## PARAGRAPH 25

The defense disputes the contention of Mr. Aragon that he was told by Thomas Daniels of DFI that the project would not go forward unless Local 91 laborers were hired.

During his deposition in the civil litigation, Thomas Daniels stated that he relayed to Joseph Aragon what he had been told by Victor Montalbo of the Niagara Falls Bridge Commission that hiring union laborers would preclude any further picketing. Moreover, Mr. Daniels testified that he never stated that the job "had to be" union [Exhibit A - Daniels Deposition, 9/29/03, pp. 120-121].

In fact, Joseph Aragon testified in the civil litigation that it was he who gave an ultimatum to Tom Daniels. Aragon testified that during his conversation with Daniels he indicated that he would attempt to negotiate a price for bringing union labor on board provided that Duty Free would pay for the additional union labor. Aragon also testified that he told Daniels that if Duty Free would pay, he would go forward "if they wouldn't, I wouldn't" [Exhibit B - Aragon Deposition, 9/17/03, pp. 145-146].

### PARAGRAPH 26

During the meeting of October 2, 2001 Mr. Aragon never claimed that "he was aware that Kulback's Construction used some union labor."

The defense reiterates the factual statement portion of the Plea Agreement concerning what actually was said at the October 2, 2001 meeting.

### PARAGRAPH 27

During the October 2, 2001 meeting, there was never any agreement to hire one Local 91 laborer for each work shift.

### PARAGRAPH 29

Aragon incorrectly told the probation officer that Kulback's hired a Local 91 laborer from Anastasi Trucking.

When asked during his civil deposition as to the number of union laborers to be working on the project per day, Aragon testified that he was not involved in the "day-to-day operations" [see, Exhibit B - Aragon Deposition, 9/17/03, p. 146].

During his testimony before the grand jury, Brian Kulbacki testified that he did not know how many Local 91 laborers that Anastasi used on the project [Exhibit C - Kulbacki Grand Jury Testimony, p. 18].

It should be noted that the subsequent picketing of the project in and around January and February 2002 did not involve Laborers Local 91 [source - James Roscetti, attorney for the Niagara Falls Bridge Commission].

Furthermore, Aragon failed to mention the impact of the 9/11 attacks and the concomitant additional security at the bridge as factors in the failure of his operation. During a conversation with Victor Montalbo, counsel learned that outbound Customs inspections were initiated for the very first time at the Lewiston/Queenston Bridge subsequent to the 9/11 attacks.

Lastly, although Mr. Aragon mentioned the litigation with the DFI, he failed to inform the probation officer that DFI's suit against him for abandoning the project without justification was resolved by a settlement under which Mr. Aragon paid money to DFI.

DATED:   October 24, 2006
         Buffalo, New York

Respectfully submitted,

_____
JOSEPH M. LaTONA
Attorney for Defendant,
  JOEL CICERO
Office and Post Office Address
716 Brisbane Building
403 Main Street
Buffalo, New York 14203
(716) 842-0416

# EXHIBIT A

Case 1:02-cr-00073-RJA-LGF   Document 773   Filed 10/24/06   Page 6 of 7

**PROSERVE v. DUTY FREE**
DEPOSITION OF THOMAS DANIELS   CASE NO. 03-N-715

120
**CERTIFIED COPY**
September 29, 2003

1  Gandel had been terminated. They didn't have
2  another person onboard as yet. And I say
3  terminated. He left. I don't know if he was
4  terminated.
5      Q.   Did you ever talk to Joe Cicero?
6      A.   In a meeting where we did a presentation
7  of plans, and that was in group with, as we were --
8  we had a set of renderings that were really hand
9  sketches of what the -- what the building was going
10 to look like. We made that presentation at a board
11 meeting.
12     Q.   And this was sometime before September?
13     A.   Yes, way before.
14     Q.   Okay.
15     A.   And I don't remember when that was.
16     Q.   Did you ever have any discussions with
17 Mr. Aragon to the effect that if he were to hire a
18 certain number of union laborers that the picketing
19 would go away?
20     A.   There was a discussion that I had with
21 Joe Aragon conveyed to me by Vic Montalbo that the
22 job had to be -- not had to be. Should be union to
23 prevent any more of the picketing. And I believe it
24 was at a similar time to this, and I passed that on
25 because, again, Joe Kearney wasn't there.

Case 1:02-cr-00073-RJA-LGF   Document 773   Filed 10/24/06   Page 7 of 7

**PROSERVE v. DUTY FREE**
DEPOSITION OF THOMAS DANIELS   CASE NO. 03-N-715

**121**
**CERTIFIED COPY**
September 29, 2003

1  Q. So you passed on to Mr. Aragon that
2  Mr. Montalbo had told you that --
3  A. That was the cause of the picketing.
4  Q. And that Mr. Montalbo had told you that
5  if Mr. Aragon hired union laborers, then they
6  wouldn't have a problem?
7  A. He said he thought that was the source of
8  the picketing problem.
9  Q. Okay. Now, if we look at this memo of
10 September 24, 2001, sort of as a point of departure,
11 when in reference to that date were the premises
12 first picketed?
13 A. I wish I could give you a date, but I
14 don't know. I believe it to be after this.
15 Q. Did you find out that basically before
16 you had even had time to respond to this memo, that
17 the site was being picketed?
18 A. I don't remember that.
19 Q. I'm just wondering if there was some
20 ultimatum or timeframe given to ProServe where you
21 have five days or ten days or whatever to get this
22 straightened out or else we're going to picket. Do
23 you recall being given any?
24 A. I don't remember anything like that.
25 Q. Now, Mr. Aragon did, in fact, suspend